**WO**                                                                                           JDN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Riki L. Koehler,          ) | No. CV 09-1599-PHX-JAT (JRI) |
|     Plaintiff,            ) | **ORDER** |
| vs.                       ) | |
| Charles L. Ryan, et al.,  ) | |
|     Defendants.           ) | |

Plaintiff Riki L. Koehler filed this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Charles L. Ryan and Warden Theresa Schroeder (Doc. 12).[1] Before the Court is Defendants' Motion to Dismiss for failure to exhaust administrative remedies (Doc. 18), which Plaintiff moves to strike (Doc. 24). Also before the Court are Plaintiff's motions for injunctive relief (Doc. 16), for Court intervention (Doc. 22), and to compel release from detainment (Doc. 30).

The Court will grant Defendants' Motion to Dismiss, deny Plaintiff's Motion to Strike, dismiss the action, and deny the remaining motions as moot.

**I.    Background**

Plaintiff's claims arose during her confinement at the Arizona State Prison Complex (ASPC)-Perryville, in Goodyear, Arizona (Doc. 12 at 1). In Count V of her First Amended Complaint, Plaintiff alleged that Schroeder implemented a policy of understaffing that

---

[1] Upon screening, the Court dismissed Schriro, Robles, and Courture as Defendants (Doc. 13).

provided just 1 officer for 292 inmates and that this policy created hostile and dangerous conditions (id. at 5B).  Plaintiff claimed that because of the these conditions, she was subjected to harassment and an attempted violent assault (id.).  In Count VI, Plaintiff alleged that Schroeder failed to enforce no-smoking areas and, as a result, failed to protect Plaintiff from excessive exposure to second-hand smoke (id. at 5C-5D).  And in Count VII, Plaintiff averred that Ryan implemented a policy that allowed inmates "to hang on the runs" and that this policy exacerbated the deplorable conditions, posed a serious risk of harm to Plaintiff, and led to Plaintiff suffering harassment and an attempted assault (id. at 5E-5F).

The Court screened the First Amended Complaint and directed Defendants to respond to Counts V, VI, and VII; Counts I-IV were dismissed (Doc. 13).  In lieu of an answer, Defendants filed a Motion to Dismiss (Doc. 18).

Meanwhile, Plaintiff filed a Motion for Emergency Preliminary Injunction seeking an order to (1) prohibit all smoking by inmates at the Perryville units, (2) prohibit the sale of tobacco products, (3) confiscate all tobacco products and lighters, (4) suspend an ADC policy that allows inmates to be on the runs and stairs, (5) discipline inmates found smoking, and (6) prohibit Defendants from harassing or retaliating against Plaintiff (Doc. 16).  She also filed a Motion for Emergency Action/Compel Intervention of the Court (Doc. 22).  Plaintiff alleged that Defendants retaliated against her by revoking a medical "chrono" order, which had required that Plaintiff be housed with a nonsmoker due to her allergy to second-hand smoke (Doc. 22).  In her response to Defendants' Motion to Dismiss, Plaintiff moved the Court to strike Defendants' motion (Doc. 24).  And, lastly, Plaintiff filed an Emergency Motion to Compel Release of Wrongful Detainment (Doc. 30).  She seeks an order compelling the ADC to release her from lockdown because she has been subjected to deplorable conditions and denied legal materials (id.).

On August 20, 2010, the Court granted Defendants' request to extend the deadline to respond to Plaintiff's motions for injunctive relief (Doc. 29).  The Court directed that

1 responses are not due until after it rules on Defendants' Motion to Dismiss (id.).[2]

## II.     Defendants' Motion to Dismiss

### A.     Defendants' Contentions

Defendants contend that Plaintiff failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, they proffer a copy of Department Order (DO) 802, *Inmate Grievance System*, which sets out the steps in the grievance process (id., Ex. A, Attachs. 1-2[3]).

The first step in DO 802 requires an inmate to attempt to resolve a complaint informally by submitting an inmate letter to the Correctional Officer (CO) III (id., Attach. 1, DO 802.08 § 1.1). If the complaint cannot be resolved informally, the inmate proceeds to the second step, which is a formal grievance to the Grievance Coordinator within 10 days from the date the inmate received a response to the inmate letter (id., DO 802.09 § 1.1.2). If the complaint is still unresolved, the inmate may proceed to the third step; an appeal to the Warden/Deputy Warden within 10 days from receipt of the Grievance Coordinator's response (id., DO 802.09 § 1.3.1). Finally, the inmate may appeal the Warden/Deputy Warden's response with a appeal to the Director, whose response is final (id., DO 802.09 § 1.4.1).

There is a separate 3-step process for medical complaints. For these types of grievances, an inmate attempts to informally resolve the issue with an inmate letter to the CO III; then files a formal grievance, which is answered by the Facility Health Administrator; and then submits an appeal to the Director, whose response completes the process (id., DO

---

[2]The Court's Order was issued before Plaintiff filed her Motion to Compel Release (Doc. 30).

[3]Defendants submit two copies of DO 802: the first one is the policy that was in effect from March 2000 until July 2009 (Doc. 18, Ex. A, Attach. 1), and the second one is the policy that became effective July 13, 2009 (id., Attach. 2). The process for a standard grievance is essentially the same under the two versions, except the July 2009 revised version shortens the time frames in which inmates must submit an appeal at each level (see id., Attachs. 1-2).

- 3 -

1 802.11).

2       The DO 802 policy provides that if an inmate does not receive a response within the time frame allotted for a response, she may proceed to the next review level (id., DO 802.07 § 1.2.4).

      Defendants proffer the declaration of Curtis Smith, Grievance Coordinator at the Perryville Santa Cruz unit, where Plaintiff was housed from April 2005 to October 12, 2006, and again from August 2007 until March 2009 (id., Ex. C, Smith Decl. ¶¶ 1, 8). Smith avers that Plaintiff filed an inmate letter with her CO III on August 5, 2006, which complained about her placement in a cell with a smoker (id. ¶ 10). Smith states that the CO III responded on September 6, 2006; the response informed Plaintiff that all cells in the Santa Cruz unit are non-smoking cells (id. ¶ 11). According to Smith, Plaintiff then submitted an inmate grievance on September 18, 2006 (id. ¶ 12). Smith states that the Grievance Coordinator responded to the grievance on September 26, 2006; the response stated that smoking is against policy, that Plaintiff was not being harassed or retaliated against by staff, and that if there is issue with an inmate smoking Plaintiff should notify the CO II or—if there was a medical concern—submit a Health Needs Request (id. ¶ 13). Defendants maintain that Plaintiff did not appeal this response (id. ¶ 14).

      Defendants further contend that Plaintiff did not appeal any other grievances related to her claims (id.). In addition to Smith's declaration, they submit declarations from Aurora Aguilar, a Hearing Officer in ADC's Central Office (id., Ex. A, Aguilar Decl. ¶ 1), Matthew Musson, an ADC Health Services Appeals Officer (id., Ex. B, Musson Decl. ¶ 1), John Baiori, Grievance Coordinator at the Perryville San Pedro Unit (id., Ex. E, Baiori Decl. ¶ 1); and Yvonne Bivins, Grievance Coordinator at the Perryville Santa Rosa Unit (id., Ex. D, Bivins Decl. ¶ 1). Aguilar avers that she reviewed the computerized log of all non-medical appeals to look for any appeals filed by Plaintiff to the Director from 2008 to the present, but found no such appeals (id., Ex. A, Aguilar Decl. ¶¶ 4-5). Musson states that upon review of the database of all medical appeals, he found that there were none filed by Plaintiff from 2008 to the present (id., Ex. B, Musson ¶¶ 4-5). Baiori avers that there is no record that

- 4 -

Plaintiff filed any grievances connected to her claims during her time at the Perryville San Pedro Unit, where she was housed from March 2009 until May 2009 (id., Ex. E, Baiori Dec. ¶¶ 8-9). And Bivins states that there is no record that Plaintiff filed any grievances related to her claims since she was transferred to the Santa Rosa Unit in May 2009 (id., Ex. D, Bivins Decl. ¶¶ 8-9).[4]

Defendants conclude that, based on the ADC grievance records, Plaintiff did not exhaust her administrative remedies regarding her three remaining claims; thus, they submit that the First Amended Complaint must be dismissed (Doc. 18 at 9).

### B. Plaintiff's Response[5]

Plaintiff submits various arguments in opposition to Defendants' motion (Doc. 23). First, Plaintiff argues that she appealed her complaints to Director Ryan, the highest review level (id. at 2). Plaintiff proffers copies of inmate letters directed to Director Ryan and dated May 24, 2009, and June 21 and 25, 2009 (id., Ex. A2, A4, A6). She asserts that the responses to these grievances made clear that Ryan did not care about the deplorable conditions of confinement and the serious risk posed to Plaintiff (id. at 2). Plaintiff submits that Ryan's disregard of the risk is further shown by his implementation of a new policy that allows inmates to hang out on the runs (id.).

Second, Plaintiff contends that her complaint to ban all smoking in prison facilities in Arizona does not constitute a grievable issue because under DO 802, actions of the governor or state legislature are not grievable (id. at 4-5).

Next, Plaintiff alleges that "kites were submitted" about inmates smoking in cells; however, Defendants did nothing (id. at 6). She states that Schroeder and officers working under Schroeder created an alternative grievance procedure, which Plaintiff followed (id.).

And finally, Plaintiff avers that the grievance policies were "wishy, washy" and they

---

[4] Plaintiff was transferred back to the San Pedro Unit in July 2010 (Doc. 21).

[5] The Court issued an Order with the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of the evidence necessary to successfully rebut Defendants' contentions (Doc. 19).

- 5 -

1 were used only to try and appease her (id. at 7). Plaintiff submits that she ultimately had no
2 choice but to seek relief from the courts (id. at 6).

3 Throughout her response memorandum, Plaintiff presents facts and arguments going
4 to the merits of her claims (see id. at 2-7). She also moves the Court to strike Defendants'
5 Motion to Dismiss (id. at 1; Doc. 24 (same filing docketed separately as a "motion")).

6 In addition to the inmate letters to Ryan, Plaintiff proffers copies of numerous other
7 inmate letters dated from 2007 to 2010 that primarily concern smoking (Doc. 23, Exs. A-E),
8 copies of ADC policies on grooming and housing unit regulations (id., Exs. C1-C2), and her
9 hand-drawn map of the pod area and designated smoking areas (id., Ex. E7).

10 **C.    Defendants' Reply**

11 In reply, Defendants assert that Plaintiff's contention that she exhausted all remedies
12 is incorrect (Doc. 25). They reargue that the grievance records shows that she filed no
13 grievance appeals (id. at 2). Defendants acknowledge that Plaintiff submitted at least two
14 inmate letters addressed to Director Ryan; however, they contend that these letters were
15 responded to by the Division Director, not by Ryan (id.). They further contend that these
16 inmate letters did not comply with the grievance procedures and do not demonstrate
17 exhaustion (id. at 3).

18 Defendants assert that Plaintiff has not alleged that any actions of the governor or
19 legislature violated her rights; they argue that her claims concern conditions of confinement
20 and are grievable under the inmate grievance procedures (id.). As to Plaintiff's request to
21 strike their Motion to Dismiss, Defendants contend that Plaintiff provides no argument to
22 support her request to strike, and they maintain that the evidence showing her failure to
23 exhaust supports their motion (id. at 4).

24 **III.   Exhaustion**

25 **A.    Legal Standard**

26 Under the PLRA, a prisoner must exhaust available administrative remedies before
27 bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin
28 v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about

- 6 -

1  prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered
2  through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a
3  prisoner must complete the administrative review process in accordance with the applicable
4  rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

5  Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus,
6  the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315
7  F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)
8  motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-
9  20. Further, a court has broad discretion as to the method to be used in resolving the factual
10 dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th
11 Cir. 1988) (quotation omitted).

**B.     Analysis**

13 As stated, Defendants must demonstrate that there were remedies available to
14 Plaintiff. See Wyatt, 315 F.3d at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37
15 (2005). Defendants submit evidence that a grievance system was available for Plaintiff's
16 claims (Doc. 18, Ex. A, Attachs. 1-2). Plaintiff's assertion that her claims in Counts V-VII
17 were not grievable under DO 802 is unavailing. The ADC grievance procedures specify that
18 issues related to conditions of confinement and complaints about institutional procedures and
19 ADC written instructions, i.e. Plaintiff's claims in Counts V-VII, are grievable issues under
20 DO 802 (id., DO 802.01 § 1.1).

21 The record shows that Plaintiff submitted numerous inmate letters related to her
22 claims (Doc. 23, Exs. A-E). But there is no evidence that Plaintiff proceeded with the steps
23 in the grievance procedures and submitted formal grievances or appeals on any of her claims.
24 Plaintiff makes no allegation that prison officials denied her grievance forms or in any way
25 prevented her from filing grievances or appeals. She asserts that she followed the
26 "alternative grievance procedures" created by Defendants; however, she does not describe
27 what those alternative grievance procedures were (id. at 6). Nor does she explain in what
28 way the grievance procedures were "wishy, washy" (see id. at 7). Without more, Plaintiff's

general assertions are insufficient to overcome the specific evidence showing that a grievance system was available.

Further, although Plaintiff addressed some of her inmate letters to Director Ryan, who is the final-appeal decision maker, that does not amount to exhaustion of remedies. <u>Griffin v. Arpaio</u> makes clear that proper exhaustion "means that the grievant must use all steps the prison holds out." 557 F.3d at 1119. Plaintiff's failure to proceed beyond the first step or to follow the proper sequence of the grievance procedures constitutes a failure to exhaust.

The Court therefore finds that Defendants have met their burden to demonstrate nonexhaustion; their Motion to Dismiss will be granted, and Plaintiff's Motion to Strike will be denied. In light of this ruling, the action will be dismissed without prejudice, and Plaintiff's remaining motions are moot.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 18), Plaintiff's Motion for Emergency Preliminary Injunction (Doc. 16), Plaintiff's Motion for Emergency Action (Doc. 22), Plaintiff's Motion to Strike (Doc. 24), and Plaintiff's Motion to Compel Release (Doc. 30).

(2) Defendants' Motion to Dismiss (Doc. 18) is **granted**.

(3) Plaintiff's Motion to Strike (Doc. 24) is **denied**.

(4) Plaintiff's Motion for Emergency Preliminary Injunction (Doc. 16), Motion for Emergency Action (Doc. 22), and Motion to Compel Release (Doc. 30) are all **denied** as moot.

(5) This action is dismissed without prejudice for failure to exhaust. The Clerk of Court must enter judgment accordingly.

DATED this 17th day of September, 2010.

James A. Teilborg
United States District Judge